I'm Judge Dennis, and Judge Weiner and Judge Duncan are the other two judges on this panel. We're here to hear your case in Jonathan Hitt v. Marsha McLane. So, Mr. Kattler, you will be the first to proceed. And let me thank you as a California counsel for serving in this case. I thank you, the court thanks you, and the United States thanks you. I wanted to be sure to do that. But thank you because I forgot to do that on the first day of this series. I feel very badly about that. So you may proceed. Thank you. Good morning, Your Honors. As Judge Dennis mentioned, I'm Kirti Datla, and I'm court-appointed counsel for Jonathan Hitt in this appeal, and I've reserved four minutes for rebuttal. Although there are several claims at issue in this appeal, there are really just two basic sets of issues involved. The first set of issues involves the district court's failure to properly apply well-worn principles about how to construe pro se pleadings at the pleading stage of a case. And the second set of issues involves the district court's misapplication of Article III standing requirements after the bench trial that was held in this case. I'd like to start with the first set of issues and to start with the simplest error. And that error has to do with the dismissal of two individual capacity claims, one involving an unreasonable seizure claim and the other involving the procedural due process claim. The sole basis for the district court's dismissal of these claims, this is at Record 528, was that Mr. Hitt did not adequately plead in the claims involvement in these constitutional violations. And this is also the sole basis on which these claims, the decision below, is defended on appeal. But that conclusion simply can't be squared with the allegations that are provided in Mr. Hitt's amended complaint. And I'd like to highlight four allegations that I think are well sufficient, but there are, of course, others in the complaint. First, Jonathan Hitt alleged that McLean had previously decided where he could reside, for example, at his home. That's at Record 69, Paragraph 16. Second, he alleged that he was summoned to the TCCO offices where he, quote, met McLean and she, quote, began the meeting by threatening to incarcerate, quote, him in the Travis County Correctional Complex or the TCCC. That's at Record 110. Third, he alleged that McLean then visited him after he was transferred to the TCCC and, quote, informed him that she did not even have a policy, quote, that had authorized her actions. That's also at Record 110. Fourth and finally, he alleges that McLean is the one who is keeping him confined in the TCCC. That's at Record 70, Paragraph 20. The clear inference from these allegations is that McLean, who we also alleged is the head of the TCCO, threatened to incarcerate him at the TCCC and then carried out that threat. That's the action that these two constitutional claims are based on, and that was all that was needed to plead her involvement and to render and to state a claim against McLean in her individual capacity. Ms. Dahla, that's very helpful. Thank you. The issue of alleging personal involvement of McLean, that I'm just I'm trying to keep straight all the different claims in this case, which is a little confusing, but your brief was very helpful. That specifically goes to the Fourth Amendment claim. Is that with respect to searches or seizures or what? These arguments relate only to two claims. The first is the Fourth Amendment unreasonable seizure claim. Okay, so that's you had me arrested after the relationship came to light with Lopez, essentially. You had me arrested and put in restrictive confinement. Is that the gist of that claim? There's that clear causal connection, but you had me arrested, taken from my therapist's office to Littlefield. That's the act. That's the gist of the Fourth Amendment. Exactly. And this also relates to the procedural due process claim, which stems from that same factual set of facts, which is that he was taken from his home to Littlefield without any notice or process before or after. Just so I understand, these are with respect to her personal capacity. That's correct, because the official. With respect to official capacity, did the procedural due process already go to a bench trial? Yes, so three claims went to a bench trial. The two we've been discussing in her official capacity, and also the other Fourth Amendment claim, the unreasonable searches claim. Right, right. Did she get relief on, or did he, sorry, did he get relief on any of those claims after the bench trial? Just so I can understand. He got relief on one of those claims. That's the procedural due process claim. The court held that there was a deprivation and the relief ordered was basically that he ordered McLean to hold some sort of hearing at which Jonathan could present evidence and get a determination on whether this action was lawful. Has that happened? So this isn't in the record, but it has happened according to the docket in the Texas State Court case. The hearing was held on September 2019. There has been no decision in that. So he has gotten the hearing, but not the written decision to which Judge Sparks said he was entitled to. Okay, is he still at, I mean, this may not be in the record, but is he still at TCCC? Yes, it's not in the record, but he's still there. Okay, thank you. Certainly. So, unless your honors have further questions about these two specific individual capacity claims, we can turn to... Oh, I'm sorry. I do have one other claim. It's not always clear to me where qualified immunity may be involved, may be a live issue. In your view, is qualified immunity a live issue as to either one of those claims? Because there are personal capacity claims. Is it even an issue that's before us? What's your view on that? Our view is that there, at this point in the case, there is no qualified immunity issue before this court because, you know, we briefed the issue in the opening brief and explained why we think the law is clearly established. The response brief does not respond to that argument or even ask this court to affirm on that alternative basis. And this court's normal procedure is not to address arguments that are forfeited in this way. And I think that rule carries extra force here because qualified immunity is an affirmative defense that's sort of designed to protect the inconvenience of the defendant. And if the defendant signals, you know, to be frank, that she seems not to care whether this claim goes forward, and we know that these claims in the official capacity have already been taken to a bench trial, so it's not clear that that much more needs to happen below. You know, our position is that this just isn't the kind of case where you would need to go out of your way and make arguments for a party to affirm on that basis. Yeah, so let's say hypothetically reversed on the lack of personal involvement with respect to these two personal capacity claims, the relief would be remand for further proceedings and presumably a QI defense could be raised, I guess. I don't know if it could be or not. I don't want to bind anybody below, but I do think, you know, if there are arguments based on, you know, the record that develops after what happens below, she could conceivably, if she decides at that point to raise qualified immunity, she could conceivably do so and the judge would decide whether that, you know, was proper, whether he waived and if not, would decide it on the merits. Okay, thank you. Certainly, so the next claim I'd like to discuss is the, it's another individual capacity claim. This is the remaining Fourth Amendment claim. It's the unreasonable searches claim. And to this claim, the argument we make on appeal is that Ms. McLean had every chance to dismiss this claim and make it clear that she wanted this claim dismissed against her in her individual capacity and simply did not. So her first chance to do so was in the motion to dismiss itself, which she styled as a partial motion to dismiss and said she was seeking to dismiss the majority of the claims. So by concession, I'm not a full motion to dismiss. The second chance was after the magistrate judge prompted her to be more specific and in her reply brief, which is at record 376 to 377, she identifies three additional claims, none of which is the unreasonable search claim. And the third chance she had was after the report and recommendation, which recommended dismissing this claim precisely because she did not address it. Sorry, which recommended against dismissing the claim precisely because she didn't address it. That's at record 474. And she didn't file an objection, even though the report and recommendation included the standard, you know, notice that if you don't object, you waive your right to review of that claim and to have it heard on appeal. So our view is that she did not seek to dismiss this claim and thus the district court should not have dismissed it essentially sua sponte. And, you know, all of the arguments we were just discussing about how qualified immunity is a defense and needs to be raised would apply to this claim too. Did she make a personal involvement argument with respect to I know she didn't mention this claim in particular, I have a record citation 157 that said she argued she wasn't personally involved in any purported violation of hits constitutional rights. So I think that the motion to dismiss was written in a very generic sense as to all the claims that it was discussing and our position is just that she was very she listed the claims that she was seeking to dismiss and both the motion itself and then the additional And this isn't one of them. So when she uses the phrase all she's not referring to claims that haven't been specifically listed. Okay, and I'll ask you about qi on this one too is qi qualified immunity presented here as a defense to this searches claim I assume this one is the gist of this one is McLean authorized or ordered whatever searches of him while he was not in TCC that were violated by the Fourth Amendment. Right. That they were sort of suspicionless searches carried out in an arbitrary and invasive manner. So I think, again, the reason we don't think that qualified immunity is an issue is because the claim, what you know shouldn't have been addressed at the motion to dismiss stage at all qualified immunity merits anything because it just wasn't in part of the motion to dismiss. Yes. Are you asking us to decide the merits of your clients personal and official capacity substantive due process claims. So we're not asking you to decide the merits of any of these claims and I'm happy to turn to the substance of due process claims which are up next. So there's two substantive due process claims that were raised in the complaint. There were more but on appeal. There are two substantive due process claims that we're pressing on appeal. And the only basis for the dismissal of these two claims which I'll articulate more clearly in just a second but the only basis for dismissal was that the district court said, these are co terminus with your procedural due process claim and so there's nothing more to be gained from these claims that's at record 532. And that's just not correct. So here are the two claims. They're both based on the articulation of the rule and selling, which this court has reaffirmed in cases like brown and earlier this month in Welsh, that when you're in civil commitment, the conditions of your confinement basically the way you're treated have to bear reasonable relationship to the purpose for which you were committed. And under the Texas statute the purposes here are supervision and treatment such that you can eventually be released from the, from the civil commitment order. So the first substantive due process claim is that, you know, essentially that the decision to transfer him from his home to Littlefield was had no connection to either of those purposes to supervision or treatment, and I'll just say the supervision prong has just that, you know, first McLean isn't qualified to make these kinds of treatment decisions there's no under the allegations in the complaint. There was no involvement of a therapist or any sort of, you know, treatment based rationale for the decision. So that's, that's interesting that this this is done under the tiered system that that was a result of the 2015 amendments to the SBA. That's correct. So, he was essentially moved from one tier to a more restrictive tier. But by allegedly by McLean and allegedly because of this relate the relationship that came to light with his chaperone. At the complaint stage, he's, that's, that's not, you know, that's not the rationale that's in the complaint. And I will also just say, you know, according to the testimony of the trial, the only explanation given was sort of something might be wrong and so I'm just going to bring them in so I can figure it out. No, I understand. I'm not going to hold you to what my questions. But so the what I'm getting at is, is under the tier system, are you saying that a sort of a medical professional can can move a committee from one tier to the other. There has to be a medical rationale for that otherwise it's possible substance due process violation. Because I mean obviously Miss McLean's not a medical professional I get that. Yeah, I think what we're arguing is not for any sort of invasive rule that would require sort of monitoring of how these institutions are run but just that in this case the allegation is everything had already been taken care of. You know, I had already been ordered to stop seeing this woman. I had already cut off communications with them everybody knew what was involved and this is from the TC CEOs report itself that he attached to the complaint. The decision to, you know, drastically change my liberty was based on no treatment rationale at all. And so that's that's really the allegation and and there was of course no involvement of a medical professional so I don't think we're arguing that it has to be the final determined decision of a medical professional but in this case there just wasn't one involved on the allegations of the complaint of the second due process claim judgment or just to articulate it is the claim related to the GPS monitoring and this one is quite basic, it's that he's confined in the TCCC, which is a high security prison where he's already subject to monitoring by motion detectors by cameras by guards, his restrictions are already incredibly limited within you know barbed wire fences, and he's on this this is not an issue in your view. Possibly it could be raised on remand if we remanded. Exactly. It's certainly not an issue in the briefs. So just very quickly I wanted to touch on the two remaining claims. These are official capacity claims and this is the set of claims that was addressed after the bench trial. These are the unreasonable search and unreasonable seizure claims. And I just think, you know, this case doesn't resemble the kinds of cases where there's a long line of contingency, because of the testimony that was provided at trial. So at trial McLean and others testified that there is in fact a policy in place that anyone in tier five, which is somebody who's living at home can be subject to suspicion with searches at any time of day or night. So the only contingency that needs to happen for this claim for this injury to occur is that he needs to be released, and there's no dispute that you will be released at some point under the testimony at trial. As for the unreasonable search, sorry seizure claim, the policy articulated at trial, the claim has unfettered discretion to order. Okay, I'll address anything else on remote. Can everyone hear me. May it please the court. The FPP act is a significant Texas statute that according to this court ensures the long term supervision and treatment of an extremely dangerous group of people that are likely to engage in repeated predatory acts of sexual violence. The district courts dismissal of hits various constitutional claims against director McLean was appropriate to not only serve the purposes of this statute but to remain consistent with both the Supreme Court and this court's precedent in this area of law. Therefore, this court should affirm for four reasons. First, McLean was entitled to qualified immunity from hits unreasonable searches claim against her in her individual capacity. Second hit does not have a substantive due process right to be free from civil commitment or the realities of civil commitment as a sexually violent predator. Third hit failed to demonstrate McLean's personal involvement in his unreasonable seizure and procedural due process claims against her in her individual capacity and fourth hit lacked article three standing to bring an unreasonable searches claim against McLean and her official capacity. Corbello on the personal involvement. I'm just going to follow the order that your counsel opposite followed because I get a little confused with all different claims on the personal involvement. I mean, do you Council cited, you know, four different record citations that show allegations. She says of personal involvement in McLean in ordering various things. I guess. Could you respond directly to that and and and also if we find that in fact there's been personal involvement adequately alleged don't we don't we just have to remand because the Rationale for dismissing the claim. It appears to have been an error. Yes, Your Honor. So I have written down those points. I think the first one Council stated was that personal involvement was alleged because hit stated McLean had previously decided where he could reside. That concludes reallocation was based on nothing. There was no assertion of facts in the record that explained how she had been the one to individually personally decide where he resided in the past. He says, Look, she's the one who decided why wasn't that enough for just an allegation of personal. Well, Your Honor. As the director of Chico. If the allegation can simply be made that the director of Chico makes these decisions than the director of any state agency their personal involvement has been shown simply by the fact that Their signature is somewhere on the paperwork that requires You know matters within that state agency to happen. The personal involvement allegation has to be Contingent on the constitutional violation itself here. The constitutional violation is a matter of what occurred specifically on February 16 not what occurred prior and not what occurred after On February 16 hit went to the Chico offices where McLean the record shows was not present was not a part of the polygraph or any sort of seizure of hit and removal to TCCC Nor was she involved in any sort of the procedural due process violation that he alleges occurred on that same day. Again, the only allegations are for actions that McLean took separate and apart from the allegations. He's bringing here. Previously deciding where he could reside. Again, that's conclusory and also meeting with him on a different date two weeks prior stating that she can decide where he where he resides. And visiting him after he was transferred to TCC, which as director of Chico and TCCC being the only facility that Chico Houses sexually violent predators is not so abnormal that it indicates she was personally involved in those decisions that took place on February 16 If the allegation is that she's a supervisory official who's implemented unconstitutional policies. Again, that's not enough to show personal involvement. Like the district court found the testimony at trial, for example, is that there were no Tico policies and therefore she had not implemented any As to when or how reconfinement must occur those policies are a part of the FTP act that is what provides Tico the authority to determine where FTP live Nowhere in the brief or in the opening argument just now did Hitt's attorney state where in the record it shows that McLean's individual actions on February 16 Or the specific policies that she implemented caused Hitt to be unreasonably seized or procedural due process rights to be violated. And even assuming this court disagrees with that point. I think your next question was about reversal Judge Duncan. And I do want to make the point qualified immunity was raised as to both of these claims. I'm going to go back to this a little bit on the unreasonable searches claim, but just to preview it. Qualified immunity was raised as to all individual capacity claims against Director McLean, including both the procedural due process and the unreasonable seizures claims here. And this court, according to Brewster vs. Drick in 587 F3 764 This court has a practice of affirming a district courts ruling on alternative alternative grounds when those grounds are supported by the record. And here the record very clearly demonstrates the assertion of qualified immunity against all individual capacity claims before the court rules on that on that defense. In her motion to dismiss and the record at 146 McLean stated, quote, hits claims against McLean and her individual capacity should be dismissed. Because she's entitled to qualified immunity unquote in the same motion in the record at 160 she states, quote, to the extent this court finds Any claim to hold constitutional merit McLean is entitled to qualified immunity and her individual capacity. She then raised the same defense in her answer prior to the ruling on the motion to dismiss. The answer to his entire complaint in the record at 217 that, quote, she asserts her entitlement to qualified immunity, unquote. In fact, in responding to that motion to dismiss hit acknowledge the defense had been raised. He stated in the record at 283, quote, McLean argues that she is entitled to qualified immunity in her individual capacity, unquote. He made no argument at the time that McLean had only asserted qualified immunity to some of his claims. Instead, it was a blanket statement acknowledging that all individual capacity claims had a qualified immunity defense against them. In Sheltia versus Wood at 47 F third 1427 this court made clear that so long as a public official please an affirmative defensive qualified immunity. Simply in his answer the district court may on its own motion require a plaintiff to reply to that defense in detail. And that's exactly what happened in the court below. In his order in the record at 533 the district court stated, quote, McLean pleaded qualified immunity in both her answer and her motion to dismiss, unquote. And upon finding that the burden properly shifted to hit to negate that defense and he was given two opportunities to do so. Both in response to the motion to dismiss, which he took by acknowledging the defense had been asserted as well in in objections to the report and recommendation. The only argument. Let me let me say this. I'm trying to understand your argument about immunity in this appeal. I'm looking at your brief pages nine and 10 which, to be honest with you, doesn't just doesn't contain a lot of argument contain some case citations. I get that. Is that all you are arguing to this court on pages nine and 10 or is there somewhere else in your brief where you're trying to flesh out the qualified immunity. Because I just don't see it. No, Your Honor. I'll concede that the brief itself is is not as detailed as my argument thus far has been But I think the reasoning is sound the court nearly needs to look at the record in order to determine that qualified immunity was raised that every possible time and the district court properly found that to be the case. And I also want to note that But I'm talking about the substance of the qualified immunity. Why, why should there be qualified immunity here. Why, why should your I assume you're asking us as an alternative basis for affirming to do it on qualified immunity or maybe it's not an alternative one basis for affirming is qualified immunity. Right. The court could get there, although respectfully the appellant did not raise any sort of argument against the district courts finding of qualified immunity. The brief is very clear that the issue of talent has is that the district court made a response a dismissal based on qualified immunity. If the court reviews the appellant's brief, it will see that there is no argument as to whether both factors of qualified immunity were not met based on the allegations in the complaint. And there's simply no analysis to that effect. And so respectfully that that argument is not before this court and able to be decided. Again, I believe the record demonstrates clearly that the issue was raised. It was like what Sounds like what you're arguing about is the allegations of personal involvement that that sounds like where the argument is being joined. Is that right. I'm sorry, Your Honor. You're asking if the qualified immunity issue on the unreasonable. I'm trying to figure out. I'm confused. Obviously, I'm trying to figure out where parties are joined their argument. With respect to the Fourth Amendment seizure claim the 14th Amendment procedure due process claim and even to some extent, the searches claim. Is that the argument is the argument about whether the allegations are sufficient to show McLean's personal involvement in activities. Is that what we're arguing about here. I do believe that if the argument about qualified immunity and its application to the unreasonable searches claim with something that this court could reach or decided to reach. Yes, I believe personal involvement would be One way in which qualified immunity could be found because just like the unreasonable seizures and procedural due process claims. There have been no factual allegations as to how defendant McLean participated in any of the searches that hit complained of Again, that's not what appellant has argued to this court appellant is simply arguing that the district court acted improperly in making a response a dismissal on the basis of qualified immunity, not that qualified immunity was analyzed incorrectly in any way. Does that make that clarify it judge Not really. I thought the personal involvement argument was distinct from qualified immunity. I thought it was. Well, there have been allegations that she was personally involved in any of these things. Therefore, that couldn't support 1983 liability. On behalf of interpersonal capacity. I thought that was the argument. And we're supposed to look at the allegations and see whether It was properly alleged So for the unreasonable seizures and procedural due process claims. My understanding is that's what appellant would like the court to do is to look at the allegations of personal involvement. I will point out that Are not sufficient Correct. Correct. This court requires distinct factual allegations about the constitutional violation itself. And I don't believe that there's any case law for the basis that allegations about what occurred on different dates unrelated to the events that issue in this case are sufficient to show personal involvement. I just want to note for the court that to respond to dismissal on the basis of qualified immunity is not the basis for a finding of abusive discretion in this case. Plenty of appellate courts, the third, fourth, eighth, ninth, 10th, 11th have all affirmed district court dismissals where to respond to a dismissal has occurred on the basis of qualified immunity. They do so because 28 USC section 1915 E2B which governs ISP complaints requires district courts to screen for claims that, among other things, seek monetary relief from an immune defense. This court can make a similar ruling and it doesn't have to go far to do so, given its ruling in Bohannon at 527 Federal Appendix 283 In Bohannon, this court allowed a district court to sui fonte screen an ISP complaint and dismiss that case based on sovereign immunity, specifically because section 15 allows this Given this court's interpretation of section 15 and the fact that it is exactly similar to the other appellate courts that have already found this Sui fonte dismissal on the basis of any immunity defense, including qualified immunity is assuredly permitted under section 1915 and was allowed in this case where at the time it filed his amended complaint. He was an ISP plaintiff. If you could, I don't know if you have anything else on that, but on the substantive due process claim counsel opposite says that it was error for the district court to say that those claims are coterminous with the procedural due process. Meaning that say, well, you do have a substantive due process right with respect to, for instance, why you're being confined and with respect to the GPS monitor, which that sounds plausible to me. What's your answer to that. Sure. So that was thank you for getting me there. The substantive due process claim. I want to point out first in the amended complaint in the record at 78 to 79 which is the substantive due process section. There is no claim of a violation of the substantive due process right for the failure to make reconfinement in TCCC contingent on a medical providers recommendations. And similarly, there's no allegation that GPS costs violate substantive due process rights because they lack any sort of basis in medical treatment. And so one of the arguments I'd like to raise is that substantive due process was not argued on either of these bases and should not be before this court. Even if this court reaches those arguments. However, I think brown at 911 F third to 35 is the case to rely on there. This court. Make clear that it does not violate substantive due process for sexually violent predators to be subject to civil commitment and that holding was based specifically on a finding that sexually violent predators. That the FTP act itself serves to government interest first providing treatment to FTP so that they may potentially return to society and supervising sexually violent predators so that society is protected and secure from their dangerous tendencies. In order for this court to reverse on the substantive due process claim, it would have to find that a government action did not comport with substantive due process because the actions were not rationally related to a legitimate government interest. And that simply can't be found here on either basis for the substantive due process claim. It did not have a right to substantive due process for movement from community placement to reconfine it in TCCC to be based solely on medical discretion as appellant acknowledged yourself. The sexually violent predator act serves both security and supervision issues. I think appellant made the argument that there was no rationale for Transferring him to TCCC because it didn't serve any supervision purposes and that's just absolutely not true based on the record. The record is very clear that HIT lied to TICO officials about a consensual relationship with a woman, a relationship he was required to disclose and he decided not to do so. The security issue becomes even more of a legitimate government interest if the court considers that this woman had a minor child residing with her. Again, something that HIT is required to disclose and he didn't. This was a clear security concern, a security concern, not only for the community he lived in, but for the minor child herself. There is a government interest established by the Brown case in security and therefore HIT's removal from community placement back to TCCC Clearly served that interest and there's no basis to find a substantive due process violation on those grounds. The GPS monitoring is the court can reach a similar sort of finding. I think HIT argues that the payment of his GPS monitoring costs does not serve a medical treatment purpose and therefore violates his substantive due process rights. But again, this ignores the second legitimate government interest that the Sexually Violent Predator Act and its provisions serve both security and supervision. There doesn't need to be a medical basis for having to pay these costs because GPS monitoring clearly serves a security purpose. How does it serve a security purpose when he's confined as he is at the facility? Your Honor, these are people who have been deemed so unable to control a desire to engage in repeated predatory acts of sexual violence against other people that they've been civilly committed. There's no basis to find that GPS monitoring in addition to cameras that catch as many angles as one can possibly catch in a facility. Those sorts of security measures are more than rationally related to a government interest in security. It's the security of the sexually violent predators. I think you missed a question. I understand as a general matter why GPS is relevant. My question was why when he's in a tightly confined facility as he is now, why is it relevant to security where he is now? Because of the nature of their offenses, Your Honor. These are all sexually violent predators being housed in the exact same facility, being required to interact with each other at any given time. They also are required to interact with security at TCCC. GPS monitoring offers an additional level of security that cameras that are only able to catch certain angles and that I think the recent storm in Texas have demonstrated to us can, you know, technology can be flawed at any moment in time. The second layer of security. I'm sorry? You're saying that the GPS monitor is used while he's in this facility to monitor his movements. Is that correct? Yes, Your Honor. Okay. This is not in the record, but the GPS monitoring is only provided to the sexually violent predators within TCCC who are lower level in the sense that they're more likely to attempt to flee the facility as well. Okay. If the court has no further questions on the substantive due process piece, I'd like to move just quickly to the article three standing portion. If I could have just an additional minute or if the court would like, I can. I can. One minute. Thank you, Your Honor. I would just like to point out the article three standing requires a clear, immediate, and likely threat of the claimed injury. There is no claim here that demonstrates such a likely and immediate threat. The speculative starting point that Hitt may at some time in the future be placed in community placement again and then subject to the same searches he complains of is just that. It's entirely speculative. The court, I would refer the court to the statute itself. Nothing in the statute even requires Hitt to go back to community placement before he is released completely into society. That can be done after a biennial review by TICO as well as if he petitions the court and that's granted. And so there is certainly a world before him where community placement isn't even a reality, much less a likely and immediate reality. And to the extent this court disagrees, again, the likely and immediate threat has to also be tied to the searches itself. Nothing in the testimony at trial, specifically volume one, page 64, demonstrated that there was any policy within TICO as to how searches for tier five offenders need to be done. This court should affirm the district court's rulings on all grounds. Thank you for your time. Thank you, Ms. Corbella. Ms. Darnley, you have three or four minutes. We'll give you a confirmation on that. Not just for the minute, okay? Corbella, you have five minutes on the book. Thank you, Your Honor. I think I'll take the arguments in the order that we've been discussing them. But at the outset, I think there were a lot of new arguments in my friend on the other side's argument. And it's perfectly understandable why, given the way that the briefing interacts with each other. But I think this is a case where the defendant has had multiple opportunities to make arguments and the arguments that we were pressing in the opening brief were quite clear. And where the defendant chose not to respond to them in the briefing and thus chose not to give us a chance to respond in their reply, the proper thing to do is to take the argument as it came to you on the briefs. And the basic way to understand the briefing, I think, is that we identified the bases for the district court's opinion and explained why they were wrong. And the appellee rested solely on the justifications given by the district court. And I think those are the arguments, you know, the simplest way to resolve this appeal is to address those arguments. And as Judge Shunkin's questions have pointed out, because this case will proceed, there are other ways to raise various arguments that the appellee would like to raise now at later stages of the cases. So I'd like to start with the two individual capacity claims, the unreasonable seizure and procedural due process claims. These are the claims for which the real dispute between the parties here is whether or not the complaint adequately alleged McLean's involvement. And I just don't think that my friend on the other side is applying the proper standard under Rule 8, which is that you have to plead facts that plausibly allow for the inference of what you're alleging. And that's what happened here. McLean is the director of this organization. She threatened to do something. That action occurred. And then she visited him and when asked to explain why that action had occurred, said, you know, I don't really have a policy in place that justified it. The reasonable inference is that she carried out the threat. The fact that she wasn't there is irrelevant because the test is not whether she participated in the actual seizure. The test is whether she had the authority to order the action that's the subject of the constitutional violation. There's simply no reasonable inference that you could draw that some random person unnamed in the complaint and undiscussed today made this decision and that she sanctioned it after the fact. That's the kind of inference that you don't draw at the complaint stage because it's an adverse inference. I would like to note that counsel, my friend on the other side, said that no discussion of qualified immunity was raised in the opening briefs as to these two claims, and that's just incorrect. We explained at pages 38 and onwards why we think these two violations were clearly established. And you might draw an inference from the district court's decision that he thought these violations, as alleged, were in fact so obvious that that's why he didn't rule on qualified immunity on these grounds, but instead went to the personal involvement rationale. So I think taking them the next claim, which is the unreasonable searches claim, the dispute here. The only new argument that was raised that I think I should respond to is that my friend on the other side suggests the district court's decision can be justified under the screening provisions of the PLRA, and that's not what the district court did here. It's not an argument that was raised in the briefs, and it doesn't excuse the failure to brief the qualified immunity issue to seek to dismiss this claim at all below. The fact that as to the claim she raised, she did raise a qualified immunity defense, is not a dispute. The dispute here is that she chose not to seek to dismiss the unreasonable searches claim, and so it's not an issue. On the substantive due process claim, I think the only thing that needs to be emphasized at this point is that these two claims are being assessed at the motion to dismiss stage, and counsel's numerous justifications or explanations after the fact have no basis in the complaint. And I'd also just add that they don't have a basis in the record that was developed at trial. For example, at trial, the justification given was not, I thought that this was a dangerous situation for Ms. Lopez's child because communication had been cut off by that point. The justification given by McLean in her actual testimony, which is cited in the opening brief, is I just had this feeling that I needed to bring him in because something had gone wrong. That's not a community danger finding at all. And finally, as to the standing arguments, I'm not quite sure I understood my friend on the other side's argument. I took it to be that maybe he would be released, he would skip the step of being released into the community and be released from civil commitment altogether. That's a new argument that I think doesn't have a basis in the record. I think what the record shows, this is at record 127 and 128, these sites are cited in the opening brief, is that McLean admitted she had a policy that authorized these searches. So the only thing that needs to happen here is for him to be released again. McLean admitted that she has a policy as to the seizures, and the only thing that needs to happen is that he has to be released, and then she has to act on that policy. So I think, again, this is a fairly simple case on the briefs, and we'd ask you to reverse for the reasons given in the briefing. Thank you. This case will be submitted, and all the cases will be taken out of government, and this panel will adjourn without bail.